IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | |
|---|---|
| PENSION BENEFIT GUARANTY CORPORATION, ) ) ) Plaintiff, ) ) v. ) ) UNITED AIR LINES, INCORPORATED, ) ) Defendant, ) ) AIRCRAFT MECHANICS FRATERNAL ) ASSOCIATION, ) ) Intervenor- ) Counterclaimant. ) | Civil Action No. 05-0269 |

### MEMORANDUM OPINION

This matter comes before the Court on Plaintiff's (PBGC) and Intervenor's (AMFA) cross Motions for Summary Judgment regarding AMFA's counter claims. AMFA intervened in the original suit between PBGC and Defendant (UAL) and filed a counterclaim to contest the establishment of March 11, 2005, as the termination date of the pension plan. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (2000) because it involves federal laws under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1301-1461.

1

PBGC is a government corporation responsible for paying a certain amount to a pension's beneficiaries if the pension has insufficient funds and the plan is covered by PBGC. PBGC may choose to unilaterally terminate a pension plan if it determines that the plan has not met certain minimum funding requirements or "the possible long-run loss of the corporation with respect to the plan may reasonably be expected to increase unreasonably if the plan is not terminated." 29 U.S.C. § 1342. Once PBGC has terminated a plan pursuant to § 1342, it can establish a termination date by agreement with the plan administrator. 29 U.S.C. § 1348. If there is no agreement between PBGC and the plan administrator, a court establishes a termination date. Id.

UAL is an airline that employs many thousands of employees. Some of those employees received pension benefits as part of their compensation from UAL. UAL administered one plan for the ground crews at its terminals (Ground Plan), a large portion of which was made up of aircraft mechanics. AMFA represents many of UAL's employees covered by the Ground Plan, including many of the aircraft mechanics. AMFA signed a collective bargaining agreement (CBA) with UAL on March 14, 2002, on behalf of many of the Ground Plan participants. If the Ground Plan was still effective on March 14, 2005, then UAL would owe an additional $88 million of guaranteed benefits to Ground Plan participants.

2

UAL filed for bankruptcy on December 9, 2002. UAL failed to pay its minimum funding to PBGC for the Ground Plan on September 15, 2004. On March 10, 2005, PBGC determined that the Ground Plan should be terminated involuntarily pursuant to § 1342 because UAL did not pay its minimum funding and PBGC could suffer unreasonable long term harm by allowing the plan to continue. PBGC sent notices of termination which were received on March 11, 2005, to AMFA's national director, the president of AMFA Local 9 in San Francisco, and UAL. On March 11, 2005, PBGC also published notices of termination in the newspapers of UAL's major hubs: <u>USA Today</u>, <u>San Francisco Chronicle</u>, <u>Los Angeles Times</u>, <u>Rocky Mountain News</u>, <u>Denver Post</u>, <u>Chicago Tribune</u>, and <u>Washington Post</u>. Finally, PBGC issued a press release about the termination and posted that information on its website on March 11, 2005. AMFA actually issued a press release about the termination and posted it on its website that same day, March 11, 2005.

UAL initially opposed the establishment of March 11, 2005, as the termination date, leading PBGC to commence this action. On April 22, 2005, PBGC and UAL settled their dispute and agreed to the termination date proposed by PBGC. The bankruptcy court approved the settlement agreement, and it became official on May 23, 2005. AMFA intervened on behalf of the Ground Plan participants and filed a counterclaim challenging the March 11,

2005, termination date pursuant to 29 U.S.C. § 1303(f). The question before the Court is whether March 11, 2005, should be the termination date.

A court should grant summary judgment when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003)(citation omitted). However, "[w]hen considering each individual motion, the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." Id.

Normally, disputes about a termination date occur when PBGC and a plan administrator disagree. The instant case differs, however, because those two parties agree and an outside party, AMFA, is attempting to assert the arguments that a disagreeing plan administrator typically would. A court should treat PBGC's date of termination as an agency determination when it complies with 29 U.S.C. § 1348(a)(3), as it did in the instant case. While § 1303(f) permits AMFA to challenge PBGC's determination, § 1303(f) does not contain a standard of review or procedure for

4

the Court to follow. Thus, the Court must review PBGC's decision under the default standard to see if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Administrative Procedure Act (APA) 5 U.S.C. § 706(2)(A); See Alaska Dep't of Envtl. Conservation v. EPA, 540 U.S. 461, 496 (2004). The party challenging an agency decision bears the burden of proving that the decision violated the APA. Friends of Iwo Jima v. Nat'l Capital Planning Comm'n, 176 F.3d 768, 774 (4th Cir. 1999).

The Fourth Circuit uses a three step test to determine if a termination date is valid: 1) the earliest date on which the participants had notice, 2) any date on or after that day which PBGC chooses, and 3) strict compliance with the statutory method of termination. Pension Benefit Guar. Co. v. Mize Co., Inc., 987 F.2d 1059, 1063 (4th Cir. 1993). The March 11, 2005, termination date satisfies the second step because PBGC chose it, and PBGC satisfied the third step by complying with 29 U.S.C. §§ 1342 and 1348 in terminating the plan and establishing a termination date. The Court must resolve when the Ground Plan participants received notice of the termination.

As the party challenging an agency decision, AMFA bears the burden of proving when the participants received notice from PBGC. PBGC needed to give Ground Plan participants "reasonable

5

notice that PBGC was seeking termination, and thus that they no longer had a justifiable expectation in the accrual of vested pension rights." Pension Benefit Guar. Co. v. Heppenstall, Inc., 633 F.2d 293, 302 (3rd Cir. 1980). Courts have recognized a variety of methods for PBGC to give actual or constructive notice to plan participants. Id. (acknowledging that constructive notice would suffice such as notice to the collective bargaining representative); Pension Benefit Guar. Co. v. Republic Tech.s Int'l, LLC, 386 F.3d 659, 664, 668 (6th Cir. 2004) (holding that publishing a notice in hometown newspapers and issuing a notice of termination the day before the date set as termination date to the plan administrator and the union representative gave sufficient notice to participants); In re Pan Am, 777 F.Supp. 1179, 1185 (S.D.N.Y. 1991) (holding that receipt of actual notice by plan participants satisfied PBGC's notice requirement).

Here, in an effort to give notice to the Ground Plan participants, PBGC published a notice of termination on March 11, 2005, in six major newspapers of cities where UAL has a hub, San Francisco Chronicle, Los Angeles Times, Rocky Mountain News, Denver Post, Chicago Tribune, and Washington Post and in a major national newspaper, USA Today. Also on that same day, the plan administrator, the national office of AMFA, and the Local 9 office of AMFA, which represented AMFA in the CBA, received

6

notice of the termination from PBGC. PBGC issued a press release about the termination that day and posted it on its website. These facts are not in dispute, and the Court finds that PBGC's efforts to publicize its decision to terminate the Ground Plan provided constructive notice to the participants and satisfied the first step of the Fourth Circuit's test. <u>Mize</u>, 987 F.2d at 1063; <u>Republic Tech.s Int'l</u>, 386 F.3d at 664 and 667-688; <u>Heppenstall</u>, 633 F.2d at 301-02.

AMFA's reliance on the <u>Pan Am</u> decision from the Southern District of New York is not persuasive. While the <u>Pan Am</u> court appeared to acknowledge the possibility of constructive notice in an action of this type, it then proceeded to discount constructive notice as an unfair method of notice to pension plan participants. <u>In re Pan Am</u>, 777 F.Supp. at 1184-85. The <u>Pan Am</u> court did not actually recognize any constructive notice, instead establishing a termination date one week after PBGC published notices because that was when the participants received actual notice of some kind. <u>Id.</u> at 1185. This does not comport with other courts' recognition that constructive notice is an acceptable form of notice to notify plan members. <u>Republic Tech.s Int'l</u>, 386 F.3d at 664 and 667-688; <u>Heppenstall</u>, 633 F.2d at 301-02.

Finally, it seems disingenuous for AMFA to claim that its

members had no notice on March 11, 2005, when it placed a press release about the termination on its own website that very day. The Court recognizes that AMFA benefits if the termination date is delayed until March 14, 2005, or later because an additional $88 million of benefits becomes guaranteed to Ground Plan participants that day.  Nevertheless, that does not affect the Court's determination of when the participants had constructive notice.  If the Court were to consider the plight of this particular pension plan's participants, it would also need to balance that against all of the other eligible pension plan participants insured by PBGC in the United States.  The balance would almost certainly come out in favor of protecting PBGC for the benefit of all the other pension plans through out the country over this particular pension plan.

Thus, Defendant's Motion for Summary Judgment should be granted because there is no genuine issue of material fact and PBGC is entitled to judgment as a matter of law.

An appropriate order shall issue.

/s/
_____
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
November 10, 2005